623 A.2d 707

**Mary Gore DEAN et al.**

v.

**DIRECTOR OF FINANCE OF MONTGOMERY COUNTY.**

**No. 1110, Sept. Term, 1992.**

Court of Special Appeals of Maryland.

April 29, 1993.

James Grafton Gore, Jr., Vienna, for appellants.

H. Christopher Malone, Sr. Asst. County Atty. and Betty N. Ferber, Asst. County Atty. (Joyce R. Stern, County Atty., on the brief), Rockville, for appellee.

Argued before ROSALYN B. BELL,* FISCHER and MOTZ, JJ.

ROSALYN B. BELL, Judge.

Is a remainder interest in real property subject to farmland transfer taxes in Montgomery County? If so, was the tax correctly computed under the facts presented in this case? Appellants, Mary Gore Dean, James Grafton Gore, and Beatrice Louise Gore, bring these questions to us after the Circuit Court for Montgomery County affirmed a decision of the Maryland Tax Court, confirming the refusal of appellee, the Department of Finance of Montgomery County, to refund transfer taxes of $154,800. We shall affirm and explain.

The subject of this case is the land and premises known as the Gore Property or the Marwood Estate (Marwood). At the time in question, Marwood was composed of about 187.8877 acres on River Road in Potomac. In June 1988, H. Grady Gore, Jr. died, owning an undivided one-quarter interest in Marwood. His Last Will and Testament granted life estates from that interest to his surviving brother and sisters, James

---

* ROSALYN B. BELL, J., now retired, participated in the hearing and decision of this case while an active member of this Court; after being recalled pursuant to the Constitution of Maryland, Article IV, Sections 3A and 18(b), she also participated in the adoption of this opinion.

Grafton Gore, Beatrice Louise Gore, and Mary Gore Dean (Life Tenants),[1] and a remainder to his children, Jefferson A. Gore, Christopher A. Gore, Beverly A.G. Thomas, and Courtney C. Graham (Remaindermen), or their issue. American Security Bank, N.A. was designated as the personal representative, but later resigned and thereafter the Life Tenants were appointed Successor Personal Representatives.

In March 1990, in accordance with an agreement of distribution by and between the Life Tenants and the Remaindermen, the Remaindermen agreed to convey, renounce, release, and quitclaim to the Life Tenants all of their interest, both legal and equitable, in the land and premises and to the fixtures and personal property for a consideration of $2,580,000. The transfer was evidenced by a deed of distribution dated March 6, 1990, and recorded March 8, 1990 in liber 9225 at folio 800 among the land records for Montgomery County.

The deed provides in pertinent part:

"THIS DEED OF DISTRIBUTION, made this *6th* day of March, 1990, by and between MARY GORE DEAN, JAMES GRAFTON GORE and BEATRICE LOUISE GORE, Successor Personal Representatives of the Estate of H. Grady Gore, Jr., he having died testate on the 18th day of July, 1988, parties of the first part; and JEFFERSON A. GORE, CHRISTOPHER A. GORE, BEVERLY ASHBY GORE (also known of record as Beverly A.G. Thomas) and COURTNEY C. GRAHAM, parties of the second part, and MARY GORE DEAN, JAMES GRAFTON GORE AND BEATRICE LOUISE GORE, parties of the third part:

"WHEREAS, the parties of the first part were appointed as the Successor Personal Representatives by the Register of Wills for Montgomery County, Maryland, on the *6th* day of March, 1990, in connection with the administration of the Estate of H. Grady Gore, Jr. (Estate No. 052–07–88); and

"WHEREAS, in accordance with the Last Will and Testament of H. Grady Gore, Jr., the parties of the third part

---

1. The Life Tenants collectively owned the other three-fourths interest in Marwood.

were named as the life tenants of said Estate, with the parties of the second part being named as the remaindermen of said Estate; and

"WHEREAS, the parties of the second part intend by these presents to convey, renounce, release and quitclaim to the parties of the first part and the parties of the third part all of their interest, both legal and equitable, in the land and premises described herein;

"WITNESSETH: That for and in consideration of the sum of TEN AND * * * NO/100 DOLLARS ($10.00), and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties of the second part do hereby convey, renounce, release and quitclaim to the parties of the first part and to the parties of the third part all of their right, title and interest, legal and equitable in and to the herein described land and premises, and the parties of the first part do hereby grant and convey unto the parties of the third part, all of their interest, both legal and equitable, in that certain piece or parcel of land and premises situate in the County of Montgomery, State of Maryland, being more particularly described as follows:

"All of that land and premises being more particularly described on 'EXHIBIT A,' attached hereto and made a part hereof.

"BEING the same land and premises described in Liber 911 at folio 092, among the Land Records for Montgomery County, Maryland.

"TO HAVE and TO HOLD said land and premises hereinabove described or mentioned and hereby intended to be conveyed unto and to the only proper use and benefit forever of the parties of the third part, in fee simple, as tenants in common; SUBJECT, HOWEVER, to all covenants, easements, conditions and other restrictions of record.

"TOGETHER WITH all of the buildings and improvements thereupon erected, made or being, and each and every of the rights, alleys, ways, waters, privileges, appurtenances and advantages to the same belonging or in any way

appertaining; AND FURTHER TOGETHER WITH all improvements, fixtures, tangible personal property, objects of art, household effects, furniture and furnishings located in or on said premises.

"AND the parties of the second part do hereby covenant with the parties of the first part and the parties of the third part to execute such other and further assurances of said land and premises as may from time to time be requisite, and the parties of the first part do hereby further covenant with the parties of the third part to execute such other and further assurances of said land and premises as may from time to time be requisite.

"IN WITNESS WHEREOF, the parties of the first part and the parties of the second part each have set their hands and seals and delivered these presents, all as of the year and day first above written."

As stated previously, the "other good and valuable consideration" set forth in the deed was $2,580,000. The Life Tenants [2] then paid $154,800 in farmland transfer taxes to the Director of Finance of Montgomery County (Director), pursuant to Montgomery County Code § 52–21 (1984, Supp. No. 8), which imposes a tax on "all transfers in the county of a fee simple interest in real property." [3]

---

**2.** The Montgomery County Code specifies that the transferor is liable for the payment of the transfer taxes. There is no indication in the deed of an agreement between the parties that would change this requirement; however, we assume that the parties at some point agreed that the Life Tenants, rather than the Remaindermen, would be responsible for the payment of the taxes.

**3.** The transfer was taxed at a rate of six percent in accordance with § 52–21(d)(4) which provides *inter alia:*
   "(d) On land assessed as farmland, a percentage of the value of the consideration for the transfer of land, excluding improvements thereon, which, while owned by the transferor, has been assessed and taxed at any time during the five (5) years preceding transfer on the basis of being actively devoted to farm or agricultural use, said tax to be paid by the transferor of such land, which percentage shall vary according to the following schedule:
   (4) Land assessed and taxed to the transferor for more than three (3) years on the basis of farm or agricultural use, six (6) percent."

The Life Tenants then filed with the Director a claim for refund of the transfer taxes paid, claiming that the remainder was a future interest and, thus, not taxable. The claim was disallowed. The Life Tenants appealed to the Maryland Tax Court, contending that the remainder was not a fee simple interest. The Tax Court affirmed the decision of the Director and denied the Life Tenants' claim for a refund. The Life Tenants then appealed the Tax Court's decision to the circuit court, which affirmed the decision of the Tax Court. This appeal followed.

## THE TRANSFER

The Life Tenants argue that the release and quitclaim by the Remaindermen of their remainder interest in Marwood to the Life Tenants/Successor Personal Representatives was neither a fee simple interest in real property nor a transfer of land and, thus, not a taxable event. The Life Tenants claim that the Remaindermen only had a future interest, which would give them a right to possess the property at some future date.

To support this contention the Life Tenants cite *Myers v. Myers*, 185 Md. 210, 221, 44 A.2d 455 (1945), in which the Court of Appeals stated:

"It is ... well settled that a vested remainder is a present, fixed right to future enjoyment, and is an estate which the owner can convey or devise or which descends in case of intestacy to his heirs." (Citations omitted.)

In addition, the Life Tenants argue that a vested remainder interest, while freely alienable, devisable, and descendible, *see*

---

This Court upheld the constitutionality of the farmland transfer tax in *Vournas v. Montgomery County*, 53 Md.App. 243, 249, 452 A.2d 1263 (1982), *aff'd*, 300 Md. 123, 476 A.2d 705 (1984), in which we said:
"The transfer tax is imposed at the time of sale and transfer of property and is based on the consideration for the sale. The rationale for the tax is that at the time of transfer of farm assessed land the County seeks to recapture part of the revenue lost during the time the land received a lower preferential farmland assessment. *Rapley v. Montgomery County*, 261 Md. 98, 100 [274 A.2d 124] (1971)."

*Culver v. Culver,* 47 Md.App. 579, 588–89, 425 A.2d 222, *cert. denied,* 290 Md. 713 (1981), is not a fee simple estate in real property. They claim that a fee simple interest is an estate in real property, whereas a vested remainder is not a fee simple interest, but a future interest. Thus, they contend that the Remaindermen did not have a fee simple interest in the property and that all they received from the Remaindermen was the waiver of a contingent future interest in Marwood. We disagree.

The interest that the Remaindermen received upon the death of H. Grady Gore, Jr. was a vested remainder in fee simple. When the Remaindermen conveyed their interest to the Life Tenants, they transferred a fee simple interest in Marwood.

H. Grady Gore, Jr. devised the remainder to his children *per stirpes.*[4] The devise of the remainder to the children and their heirs created a fee simple estate. Maryland Real Prop. Code Ann. § 4–105 (1974, 1988 Repl. Vol.), provides:

> "No words of inheritance are necessary to create an estate in fee simple or an easement by grant or by reservation. Unless a contrary intention appears by express terms or is necessarily implied, every grant of land passes a fee simple estate, and every grant or reservation of an easement passes or reserves an easement in perpetuity."

This principle has been recognized in Maryland case law for over 100 years. *See Hawkins v. Chapman,* 36 Md. 83, 94–95 (1872); *Farguharson v. Eichelberger,* 15 Md. 63, 73 (1860).

Here, the Remaindermen took a vested remainder in fee simple as described by C. Moynihan, *Law of Real Property,* 118 (2d ed. 1988):

---

4. The term *"per stirpes"* means the taking by representation from a stock or root, so that descendants of a deceased individual take the part to which he or she would have been entitled had he or she lived. *Patchell v. Groom,* 185 Md. 10, 15, 43 A.2d 32 (1945); *see also Johnson v. Swann,* 211 Md. 207, 213, 126 A.2d 603 (1956). Thus, the descendants essentially step into the place that the deceased individual would have occupied.

"Thus, A owning Blackacre in fee simple conveys it 'to B for life and then to C and his heirs.' B has a possessory life estate, called the particular estate, and C has a remainder in fee simple."

Professors T. Bergin and P. Haskell in their treatise, *Preface to Estates in Land and Future Interests,* 25 (2d ed. 1984), state that a remainder subject to a life estate is a fee simple interest:

"O transfers 'to A for life, then to B and his heirs.' Does A have an estate in fee simple absolute? Clearly not.... A owns a present estate for life. What about B? B does own an estate in fee simple absolute. During A's possession, B's estate will be a future one. When A dies, B's estate in fee simple absolute will become a present one. If B dies before A, B's future estate in fee simple absolute will pass either to his heirs or, if there is a will, to those whom he named in it as takers."

Professors Bergin and Haskell also explain that a remainder is a fee simple interest lacking only present possession:

"A remainder is a future interest *created in someone other than the transferor* that, *according to the terms of its creation,* will become a present estate (if ever) *immediately upon, and no sooner than, the expiration* of all prior *particular* estates *created simultaneously with it.* That is quite a mouthful, so let us give an example. Suppose O transfers 'to A for life, then to B and his heirs.' Is B's interest a remainder? Since B is someone other than the transferor, our first requirement is met. B's interest may become a present estate immediately upon, but not before, the expiration of A's estate for life. (Note that when B's estate becomes a present estate, it will not *cut short* A's estate for life; nor is there any gap between A's death and the time when B's estate will become present.) Therefore, our second requirement is met as well. A's estate is prior in order of possession to B's, and was created simultaneously with B's. Finally, owing to the fact that A's estate is shorter than an estate in fee simple—e.g., is merely *part* of an estate in fee simple, it is a particular estate. Since all

our definitional requirements are met, B must have a remainder. . . . The language of the transfer gives the remainder 'to B *and his heirs*,' so B has a *remainder in fee simple absolute.*

\*  \*  \*  \*  \*  \*

"His remainder . . . may be transferred in whole or in part by *inter vivos* transfer; it may be devised, and it may be inherited by his general heirs under the laws of intestate succession. It is, in sum, full durational ownership, lacking only present possession."

Bergin and Haskell, *supra*, at 62–63, 65 (emphasis in original).

The Maryland courts have held that vested remainder subject to a life estate is a fee simple interest. *Bosley v. Burk*, 154 Md. 27, 29–30, 139 A. 543 (1927); *Gill v. Wells*, 59 Md. 492, 496 (1883); *Downin v. Sprecher*, 35 Md. 474, 480 (1872); *Petrlik v. Petrlik*, 43 Md.App. 222, 226, 403 A.2d 850 (1979). For example in *Gill*, under a complex state of facts, most of which are irrelevant to the instant case, the decedent devised his farm to his wife and daughter. Under the terms of the will the daughter was the owner in fee of the whole farm, subject to the wife's life estate in one-half the farm. The daughter's interest was a contingent remainder in that it was dependent on her reaching the age of 18. The Court of Appeals held that the daughter of the decedent, who was an infant at the time of his death, "became the owner in fee, of the whole estate, subject to a life estate of her mother in one-half of it." *Gill*, 59 Md. at 496.

In *Downin*, 35 Md. at 478, a testator made a devise to his daughter for her life and, after her death "to her male children, . . . the *said children* to hold in *fee simple* after her death." (Emphasis in original.) The Court held:

"By this will the sons of . . . [the testator's daughter], living at the death of the testator, took vested remainders in fee subject to open and let in after-born sons."

*Downin*, 35 Md. at 480 (emphasis deleted).

In the instant case, the terms of the will provided that the Remaindermen would take after the death of those holding life

estates in Marwood. Thus, under the case law the Remaindermen held a fee simple interest in the property. Montgomery County Code § 52–20 (1984, Supp. No. 8), authorizes the County to impose a tax upon the transfer of "any fee simple interest in real estate." Section 52–21 imposes the tax upon all transfers of "a fee simple interest in real estate." When the Remaindermen made a transfer to the Life Tenants of their fee simple interest, the transfer was subject to the transfer tax imposed under § 52–21.

In affirming the decision of the Maryland Tax Court, the circuit court judge stated:

"It is my view that when this transfer took place, and no one is disagreeing that it was indeed a transfer, from the children to the [Life Tenants], that a fee simple interest in real property was what was transferred and that the County properly levied a tax under Section 52–21."

We find no error in this conclusion. The Remaindermen had a fee simple interest that they transferred to the Life Tenants for consideration. Under the plain language of the Montgomery County Code, such a transfer is taxable; thus, the County was entitled to levy a tax.

### –Merger–

■ The Life Tenants argue that the transfer of the remainder interest to them was not a transfer of a fee simple interest, but was merely a merger of the life estate with the remainder interest, which, when completed, would create a fee simple estate.

Professor Lewis Simes in his treatise, *Law of Future Interests* 35 (2d ed. 1966), states:

"It is a recognized principle of the common law that, if two consecutive, vested, legal estates in land should, after their creation, come to be owned by the same person, the lesser estate is merged in the larger. Thus, where land was conveyed to A for life, with remainder to B and his heirs, and A thereafter conveyed his life estate to B, the life estate was said to be merged in B's fee simple. B did not have a

life estate and a remainder; he had merely a possessory fee simple."

To support their argument, that the conveyance at issue was a merger and not a taxable transfer, the Life Tenants cite *Bosley*, 154 Md. at 30, 139 A. 543 in which the Court of Appeals stated:

> " 'Whenever a particular estate for life and the next vested estate in remainder or reversion expectant thereon meet in the same person, the former estate is merged, provided the estate in remainder or reversion is as large as the preceding estate. If the owner of a life estate acquires the fee to only a portion of the remainder there will be a merger *pro tanto*, but the life estate in the remainder of the property will not be affected.' [16 *Cyc.* 667]. 'Merger is the absorption of one estate in another, and takes place usually when a greater estate and a less coincide and meeting in one and the same person without any intermediate estate, whereby the less is immediately merged or absorbed in the greater. To constitute a merger, it is necessary that the two estates be in one and the same person, at one and the same time, and in one and the same right.' 10 *R.C.L.* 666. In 1 *Tiffany's Real Property* (1st Ed.), 76, the learned author states: 'It is a well-settled rule of law that whenever a greater estate and a less coincide and meet in one and the same person, without any intermediate estate, the less is immediately annihilated, or, in the law phrase, it is said to be "merged," that is, sunk or drowned in the greater.' " (Some citations omitted.)

In *Bosley*, 154 Md. at 28, 139 A. 543, the testatrix devised property to her three children "in fee, share and share alike," reserving a life estate for her husband. Bosley purchased the life estate from the husband and a one-third remainder fee interest from one of the children. He then brought suit, seeking partition of the land against the two remaindermen, who together held the other two-thirds of the remainder. The Court of Appeals stated that when "the owner of a life estate acquires the fee to . . . a portion of the remainder," the lesser estate, the life estate merges into the greater estate, which in

*Bosley* was the fee simple interest. The Court found that Bosley, by the deed, became the owner of the fee simple remainder in one undivided third, and the owner of a life estate in the remaining undivided two thirds, with the life estate merging into the fee simple interest.

The Life Tenants read *Bosley* to hold that there was no fee simple interest until the merger of the life estate and the remainder. In *Bosley,* the original devise to the remaindermen was in fee simple. *Bosley,* 154 Md. at 29–30, 139 A. 543. Therefore, the transfer of a deed from one of the remaindermen in fee simple made Bosley a fee simple owner in an undivided one-third. While *Bosley* may be instructive on the issue of merger, the issue in the instant case is whether such a transfer, no matter what estate is created, is taxable. As stated previously, since the Remaindermen held their interest in fee simple, the transfer to the Life Tenants fell under the provisions of § 52–21. The Life Tenants' argument that this transfer was a merger is merely one of semantics and does not change the result.

The Life Tenants cite numerous definitions of the term "fee simple," contending that one who has absolute dominion and control of property has a fee simple interest in the property. They claim that an estate in fee simple must include the right of possession. The cases cited by the Life Tenants, however, simply do not support their argument.

For example, in *Arnd v. Lerch,* 162 Md. 318, 322–26, 159 A. 587 (1932), the issue was whether a leasehold interest had been extinguished so "merchantable" title could be passed to a buyer. Here, however, no such lease is involved and the Remaindermen could pass title without such an encumbrance. Indeed, the Life Tenants in their brief state that "Maryland considers a fee simple absolute interest in land as an estate without limitations or conditions, in which the tenant may exercise control and dominion over the property." Likewise, the question presented in *State Roads Commission v. Johnson,* 222 Md. 493, 161 A.2d 444 (1960), differs from the one presented in the case now before us. In *Johnson,* 222 Md. at 495–502, 161 A.2d 444, the issue was whether a railroad

company was the owner of property or merely had an easement over the property. The Life Tenants cite *Johnson* to support their argument that the Remaindermen could not have exercised control and dominion over the property until such time as the life estate was extinguished by the death of all of the life tenants. We do not, however, read *Johnson* the same way. In *Johnson*, the Court of Appeals had to determine whether, based on the language contained in a charter, a railroad was entitled to a fee simple interest or merely a right of way. *Johnson*, 222 Md. at 502, 161 A.2d 444. The Court held that since there was no limiting language in the charter the railroad acquired a fee simple title to the property in question. *Johnson*, 222 Md. at 502, 161 A.2d 444. No such question exists in the case now before us since, the Remaindermen, through the provisions of the Decedent's will acquired a fee simple interest in Marwood which they conveyed to the Life Tenants.

The issue in *Macht v. Department of Assessments of Baltimore City*, 266 Md. 602, 604, 296 A.2d 162 (1972), was whether airspace superjacent, or lying above the real property could be separately assessed for the purposes of property taxes. Thus, the Life Tenants have cited no authority which holds that a fee simple interest must include the right of possession or that a vested remainder is not a fee simple interest.

The Life Tenants' contention that the transfer tax statute taxes only a present possessory interest and not a future interest requires that we read into the statute limitations that are simply not there. Contrary to the Life Tenants' contention, the statute does not limit the tax to transfers of present possessory interests, but encompasses all fee simple interests, either present or future. A fee simple interest may be either a present estate or a future estate. Bergin and Haskell, *supra*, at 23–24. Consequently, the fee simple interest taken by the Life Tenants is subject to tax under § 52–21.

### –Deed From the Personal Representatives–

The Life Tenants next argue that upon the death of H. Grady Gore, Jr., on June 17, 1988, no one but the Personal

Representative had title to the property at issue. They claim that the fact that the Personal Representative transferred title to the Life Tenants supports their contention that the Remaindermen did not transfer a fee simple interest. We disagree.

Maryland Est. & Trusts Code Ann. § 1–301 (1974, 1991 Repl.Vol.), provides:

> "All property of a decedent shall be subject to the estates of decedent's law, and upon his death shall pass directly to the personal representative, who shall hold the legal title for administration and distribution, without any distinction, preference, or priority as between real and personal property."

Under Md. Est. & Trusts Code Ann. § 1–101(p) (1974, 1991 Repl.Vol.), the term "property" includes both real and personal property. The Life Tenants argue that they transferred a fee simple interest to themselves by deed in their capacity as successor personal representatives. The Life Tenants also claim that by operation of law the Remaindermen were not required to join in that conveyance, and only did so in order to create an estoppel [5] and to evidence a complete record trail of the transaction. The Life Tenants claim that the Remaindermen's release and quitclaim of their future interest in the property cannot be considered a conveyance in fee simple, as they did not have a fee simple estate to convey.

Maryland Est. & Trusts Code Ann. § 7–101(b) (1974, 1991 Repl.Vol.), requires the personal representative to distribute all of the assets of the estate of which he or she has taken possession or control. As part of this duty, the personal representative is required to "execute and deliver an instrument or deed of distribution assigning, transferring, or releasing the assets to the distributee as evidence of the title of the distributee to the property." Md. Est. & Trusts Code Ann. § 9–105(a) (1974, 1991 Repl.Vol.). This is, however, merely an

---

5. The Life Tenants do not expand this estoppel argument any further and, without any additional explanation, we are not sure what their point is, nor are we required to fashion an argument for them. *See Tretick v. Layman*, 95 Md.App. 62, 69, 70–71, 619 A.2d 201 (1993).

evidence of title, and under Montgomery County Code § 52–24 (1984, Supp. No. 8), is not taxable.

In the instant case, based on the terms of his will, the decedent intended to have his children inherit the property. In the will, he clearly devised the fee simple remainder to the children, subject only to the life estates granted to the Life Tenants. At some point, the personal representatives would have executed a deed to the Remaindermen as evidence of title. The fact that no such deed was actually executed does not change the outcome. No transfer tax would have been imposed upon this transfer because it would be a transfer by will of real property, which under § 52–24 is not taxable. The transfer of the fee simple remainder by the Remaindermen to the Life Tenants, however, for $2.5 million, was not in accordance with the will. It was part of the transaction based on the sale of the fee simple remainder to the Life Tenants.

For purposes of clarification, what took place was actually two separate transfers. First, the Life Tenants, in their capacity as successor personal representatives, passed legal title to the Remaindermen, giving the Remaindermen a fee simple interest. The second transfer occurred when the Remaindermen transferred the fee simple remainder and legal title to the Life Tenants for $2,580,000. Even assuming *arguendo* that the deed could be construed to have transferred legal title directly to the Life Tenants from the personal representatives and the fee simple remainder from the Remaindermen, the result is unchanged. It is of no consequence, for purposes of the imposition of the transfer tax, what form was followed to effect this transaction. The transfer that was taxed was the transfer by the Remaindermen of their fee simple interest to the Life Tenants and not the transfer by the personal representatives.

### –Disclaimer–

■ The Life Tenants next suggest that the Remaindermen did not actually transfer their future interest in Marwood, but merely disclaimed or waived it. The Life Tenants argue that they, as personal representatives, never transferred any inter-

est to the Remaindermen, but held it until there was an agreement to cooperate with respect to the disposition of the decedent's estate, which entailed waiving any rights to a "contingent"[6] future interest.

Maryland Est. & Trusts Code Ann. §§ 9–201 and 9–202 (1974, 1991 Repl.Vol.), govern such a disclaimer. Section 9–201(a) provides, in pertinent part:

> "A person who is an heir, next of kin, devisee, legatee, ... beneficiary under a testamentary instrument ... may disclaim in whole or in part the right of succession to any property or interest in any property, including a future interest, by filing a disclaimer under this subtitle."

Section 9–202(a) and (c) require that any disclaimer of a future interest must be filed with the register of the county in which proceedings have commenced for the administration of the estate of the deceased owner and in the land records within nine months of the date that the interest vests, and that a copy of the disclaimer must be delivered in person or mailed by registered or certified mail to the personal representative of the deceased owner.

In the instant case, the transfer by the Remaindermen cannot be classified as a disclaimer because it did not comply with the procedural requirements set forth in the statute. It was not filed with the Register of Wills or recorded among the land records of Montgomery County within nine months of the date of death of the decedent, since the deed is dated March 6, 1990 and the date of H. Grady Gore, Jr.'s death was June 17, 1988. In addition, the Remaindermen accepted over $2.5 million for their interest, which demonstrates that what they conveyed to the Life Tenants constituted a valuable interest in property, *i.e.*, the fee simple remainder. Therefore, since the transfer was not a valid disclaimer, it was subject to taxation under § 52–21.

---

**6.** The Life Tenants claim that the Remaindermen's interest was a contingent one. As stated previously, however, the Remaindermen held a vested future interest.

■ Moreover, even if the Remaindermen had executed a valid disclaimer under the statute, their interest would have devolved to their descendants and not to the Life Tenants. Maryland Est. & Trusts Code Ann. § 9–204 (1974, 1991 Repl. Vol.) governs the effect of a disclaimer. Section 9–204(a)(1) provides:

"(a) If property or an interest in it devolved to a disclaimant under a testamentary instrument, under a power of appointment exercised by a testamentary instrument, or under the laws of intestacy, unless the deceased owner or deceased donee of a power of appointment has provided otherwise:

"(1) Where devolution to the disclaimant is expressly conditioned on the disclaimant's survival of the deceased owner or the deceased donee of the power of appointment, the property or interest disclaimed devolves as if the disclaimant had died immediately before the deceased owner or the deceased donee of the power. Except where devolution to the disclaimant is conditioned expressly on the disclaimant's survival of the deceased owner or the deceased donee of the power of appointment, *the property or interest disclaimed devolves directly to those persons who would have taken the property or interest if the disclaimant had died, intestate, domiciled in the State of Maryland, owning the property or interest, immediately before the deceased owner or the deceased donee of the power.*" (Emphasis added.)

The Fourth article of H. Grady Gore, Jr.'s will stated:

"FOURTH: I give, devise and bequeath, my Residuary Estate, outright, in equal shares to my children. The share for any child who predeceases me shall be distributed, subject to Article FIFTH, to such child's issue who survive me, *per stirpes,* or, if none, it shall be added *pro rata* to the shares for my other child or such child's issue."

Thus, under the terms of the statute and the Decedent's will, the heirs of the Remaindermen, not the Life Tenants, would

be entitled to take the disclaimed interest in the property.[7]

In addition, under Md. Est. & Trusts Code Ann. § 9–205(a)(1) (1974, 1991 Repl.Vol.), the right to disclaim property or an interest in it is barred by "an assignment, conveyance, voluntary encumbrance, pledge, or transfer of the property or interest, or a contract for any of those." When the Remaindermen executed a contract for the sale of their interest in Marwood, their right to disclaim was barred.

## OVERCHARGE OF THE TAX

█ Finally, the Life Tenants argue that, even if the tax is found to be properly due, it was miscalculated and the wrong amount was collected. The Life Tenants claim that the Director miscalculated the tax because he did not take into consideration the various uses of the property, which include residential improvements and a scenic no-build easement running to the United States Park Service property due to Marwood's proximity to the Potomac River. While the Life Tenants may have a valid point, they failed to preserve the issue for our review by not raising it before the Director, the Tax Court, or the circuit court.

An issue that does not plainly appear by the record to have been raised in or decided by the trial court generally will not be considered on appeal. Rule 8–131(a). Contentions that were neither raised by the Life Tenants nor decided by the Director, the Tax Court, or circuit court are not preserved for our review. *See Vournas v. Montgomery County,* 300 Md. 123, 132 n. 5, 476 A.2d 705 (1984); *Zellinger v. CRC Development Corp.,* 281 Md. 614, 620, 380 A.2d 1064 (1977); *Clayman v. Prince George's County,* 266 Md. 409, 415–16, 292 A.2d 689 (1972). Prior to noting this appeal, the Life Tenants only raised the issue that the remainder subject to the life estate was not a fee simple interest; therefore, we confine our review to that issue alone.

---

7. Had the will specified that a disclaimer by the Remaindermen would result in their interest passing to the Life Tenants, we would have had quite a different situation; however, that is not the case.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANTS.